IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

U.S. FAUCETS, INC. AND JAS
CORP.,

                              Plaintiffs,

       v.                                      No.  1:03-cv-1572-WSD

HOME DEPOT U.S.A. INC., HOME
EXPO, GLOBAL UNION,
PEGASUS AND DOES 1 through
200, Inclusive,

                              Defendant.

## ORDER

This matter is before the Court on Defendant Home Depot U.S.A., Inc.'s ("Defendant" or "Home Depot") Motion for Summary Judgment and Memorandum of Law in Support thereof (" Def.  MSJ") [183],  Plaintiffs U.S. Faucets, Inc.'s  ("USF") and JAS Corp.'s  Motion for Summary Judgment on Home Depot's Counterclaims ("Pl.  MSJ") [181],  Plaintiffs' Objections to Defendant's Evidence and Motion to Strike ("Mot. to Strike") [220], and Defendant's Motion for Sanctions to Preclude Testimony from Monique Chang ("Mot.  for Sanctions") [195].

1

## I.  INTRODUCTION

Plaintiffs allege in this case that Defendant unfairly terminated a business relationship between the parties regarding the sale of bathroom fixtures and accessories.  Plaintiffs claim specifically that Home Depot wrongfully lead them to believe it would purchase products from Plainitffs, and that Plaintiffs should manufacture products so they would be available for delivery as new Home Depot stores opened.  Plaintiffs claim that Home Depot actually was in the process of creating its own line of bathroom fixtures and thus did not intend to continue purchasing from Plaintiffs.  Ultimately, Plaintiffs claim Defendant fabricated reasons to terminate its relationship with Plaintiffs, and when it did so, it wrongfully disparaged Plaintiffs' bathroom products.

Home Depot claims its agreement with Plaintiffs did not require the continued purchase of products from Plaintiffs and that it otherwise was not required to continue purchases from Plaintiffs.  It claims that the contract between the parties required specific purchase requests, and that Plaintiffs breached the contract with Home Depot by providing it with defective products and failing to reimburse Home Depot for product returns after the relationship ended.  Finally, Home Depot acknowledges it complained about Plaintiffs products but that its

2

complaints were valid and that Plaintiffs otherwise are not able to sustain a claim of trade libel.

## II.  PROCEDURAL BACKGROUND

Plaintiffs filed this action in California state court on August 9, 2002. (Compl. [1].)  Defendant removed the case to the United States District Court for the Central District of California, and on May 27, 2003, the case was transferred to this Court.  (Compl., at 1; Order Transferring Case to N.D. Ga. [36].)  On February 5, 2004, Defendant filed its counterclaim against Plaintiff USF for breach of contract (Count 1), breach of express warranty (Count 2), expenses of litigation pursuant to the parties' agreement (Count 3), and litigation expenses pursuant to O.C.G.A. § 13-6-11 (Count 4).  (Answer and Counterclaim by Home Depot [54].)

On February 23, 2005, this Court allowed Plaintiffs to file their First Amended Complaint ("FAC"), in which Plaintiffs alleged fourteen causes of action against Home Depot, Global Union, and 200 fictitious "Doe" defendants.[1]  (Order

---

[1]  Plaintiffs previously requested to dismiss the Doe Defendants.  (Plaintiffs' Response in Opposition to Motion to Dismiss Amended Complaint [91], at 25.) The Court noticed it had not formally ruled on this request and does so now. Accordingly, the Doe Defendants are dismissed from this action.

Granting Second Emergency Motion for Extension of Time to File Amended

Complaint [79], at 6; FAC [60].)  On April 28, 2005, this Court dismissed

Plaintiffs' claims against Global Union and dismissed Counts 1-2, 9, 12 and 14

against Home Depot.[2]  On September 28, 2005, the Court granted Plaintiffs'

Consent Motion to Dismiss with Prejudice Counts 3-9 of the FAC.  (Order

Granting Mot. to Dismiss [180].)  Three claims remain in this action against

Defendant:  trade libel (Count 10), breach of implied duty of good faith and fair

dealing (Count 11), and conspiracy to commit all torts alleged in the Complaint

(Count 13).  Defendant's four counts in its Counterclaim also remain.

Discovery expired in this case on September 15, 2005.  On October 4, 2005,

Plaintiffs filed their Motion for Summary Judgment on Defendant's Counterclaims.

(Pl.  MSJ [181].)  On October 5, 2005, Defendant Home Depot

---

[2]  Embodied in Plaintiffs' response to this motion to dismiss was a "request" to again amend its claims against Global Union.  Because the "request" was not in the form of a motion, it otherwise was out-of-time and was not an appropriate request, the Court declined to allow Plaintiffs to file a further amended Complaint. (Order Granting GUA's Motion to Dismiss, at 12-14 [103].)  The Court notes Plaintiffs did not request to amend the complaint to add a claim for breach of contract.

filed its Motion for Summary Judgment on Plaintiffs' three remaining claims.

(Def.  MSJ [183].)

## III.   FACTS

On July 14, 1993, USF signed a Corporate Vendor Buying Agreement

("VBA") with Defendant, which was executed by USF's Vice President, Jack

Chang.  (Def. Statement of Material Facts ("DSF") [183-1], at ¶ 2; Pl.  Resp.  to

DSF [206], at ¶ 2.)  Mr. Chang signed the agreement directly below a paragraph

which states:

> I have read the NEW VENDOR INFORMATION
> PACKET and the PURCHASE ORDER AGREEMENT,
> . . . and agree to the stated terms as a basis for future
> business with Home Depot U.S.A., Inc.

(Ex. A to Def. MSJ ("POA") [183-3], at 1; Jack Chang Decl. [210], Ex. 1, at 1.)

The Purchase Order Agreement ("POA") provides that Home Depot shall purchase

products by submitting purchase orders directly to the vendor.  (POA, at 2; Jack

Chang Decl., Ex. 2.)[3]

---

[3]  Plaintiffs in their summary judgment submissions now deny agreeing that the POA would govern the parties' relationship, and claim they did not agree to be bound to the terms of the POA.  (Pl. Resp. to DSF, at ¶ 2.)  This is inconsistent with their admissions in their Answer to the Counterclaim that they "entered into an agreement with Defendant entitled Corporate Vendor Buying Agreement after reading a document entitled 'Purchase Order Agreement,'" (Pl. Answer and

The POA also requires that any changes made to orders must be made in writing, and that the VBA, POA, and any individual purchase orders constitute the "entire agreement of the parties."  (POA, at ¶ 23.)  The VBA and POA contained a "Cancellation and Returns" section giving Home Depot broad unilateral rights to cancel and return orders.   Among other provisions, Home Depot was allowed the

---

Defenses to Home Depot's Counterclaim [76], at ¶ 1), and it is plainly inconsistent with USF's execution of the VBA.  There simply is no credible factual basis disputing the agreement reached by the parties.  The terms of this agreement cannot be amended by USF's principal's claims they did not intend to be bound by the POA when the terms of the agreement that was executed plainly indicates their agreement to be bound.  These written terms cannot be amended by the parol evidence Plaintiffs offer in the affidavits submitted.  <u>First Data POS, Inc. v. Willis</u>, 546 S.E.2d 781, 784 (Ga.  2001) ("[T]he parol evidence rule prohibits the consideration of evidence of a prior or contemporaneous oral agreement to alter, vary or change the unambiguous terms of a written contract.").

Plaintiffs' inconsistent and conflicting positions, claims, and defenses have complicated the processing of this litigation and the consideration of the parties' summary judgment motions.  Plaintiffs now apparently allege that USF and Home Depot created a custom and practice by which Home Depot's purchases took place, where Home Depot would place verbal or written purchase orders for new products and would sometimes send memoranda asking USF to advise of new store openings and encourage USF to be able to supply new locations.  (Pl. Opp. to Def. MSJ [228], at 6.)  USF claims the real reason for Home Depot's termination was that Defendant and its merchants wanted to develop a new faucet line of products, called Pegasus, to replace USF in its EXPO stores, which would sell duplicates of USF's products.  (<u>Id</u>. at 12, 14.)  For the reasons stated in Section IV(B)(1), because Plaintiffs did not allege a breach of contract in this case, it is not material that Plaintiffs contend they were not treated fairly in their relationship with Home Depot.

"right to cancel any Order[4] in whole or in part at any time prior to the [requested] ship date."  (Id. at ¶ 19.)  Home Depot was provided other broad cancellation and return rights for circumstances ranging from failure to deliver on the specified delivery dates to shipment of less than the requested quantities.  (Id. ¶ 21.)  The agreement specifically provided that the vendor "warrants that the merchandise will be of good quality, material, and workmanship; merchantable; fit for its intended purpose; and free from any and all defects."  (Id. at ¶ 13.)  The POA also authorizes Home Depot to "return all or part of merchandise, paying only for any part retained at the pro-rated Order rate and returning the balance at Vendor's expense" if merchandise is defective or not fit for the purposes sold.  (Id. at ¶ 21.)  Neither the VBA nor the POA required Home Depot to purchase, or once purchasing commenced, to continue purchasing products from USF.

The relationship between USF and Home Depot apparently was good for a number of years.  However, in 1999 and 2000 Home Depot asked USF to change the appearance of its packaging for its products.  (DSF, at ¶ 17.)  Defendant also complained to USF that its packaging was not strong enough to support the weight

---

[4]An "Order" was defined as any purchase order whether "written, verbal, or electronically communicated."  (POA, at ¶ 1.)

of its faucets.  (Id. at ¶ 16.)  Home Depot expressed concern that USF's products did not comply with the applicable lead standards, and in 1999 they sent several USF products to an independent laboratory to be tested for compliance with these standards.  (Id. at ¶¶ 18-19.)  Around the same time period, Home Depot complained to USF that parts marked as "SCRAP" had been found in one or more of USF's products.  (Id. at ¶ 20.)  In 1999, USF had delays in its shipping of certain products to Home Depot.  (Id. at ¶ 23.)  In August 1999, Home Depot informed USF that it would lose space in a new store in Alpharetta, Georgia due to USF's poor performance.  (Id. at ¶ 22.)

In November 1999, representatives of Home Depot and USF attended a meeting.  At that meeting, Hal Weinstein, who was employed by Home Depot, asked USF to address problems concerning product quality, packaging and compliance with lead standards.  (Id. at  ¶ 24.)  In April 2000, Mr. Weinstein sent a memorandum to Ron Gagnon, USF's sales representative, which identified the multiple problems that Home Depot had asked USF to remedy.  The memorandum informed USF that Defendant had decided to reduce USF's store space in all the EXPO Design Centers due to USF's failure to remedy Home Depot's concerns.  (Id. at ¶ 25.)  Home Depot allegedly reiterated its complaints in an October 2000

meeting between Ron Gagnon, Jack Chang, USF's Vice President, and Home Depot, at which Home Depot terminated its relationship with USF.  (Jack Chang Decl. [210], at ¶ 33.)  Plaintiffs heard "rumors" that Home Depot representatives told other vendors in or after October 2000 about complaints they had with USF. The rumor was these complaints were allegedly made during conversations in which Home Depot explained why it had terminated its business relationship with USF.  (Id.)

**IV.   DISCUSSION**

A.  Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56©.  The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.  Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  Graham v. State Farm Mut. Ins.

9

Co., 193 F.3d 1274, 1282 (11th Cir. 1999).  The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."  Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must resolve all reasonable doubts in the non-movant's favor.  United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am., 894 F.2d 1555, 1558 (11th Cir. 1990).  "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ."  Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246.  But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B.  <u>Defendant's Motion for Summary Judgment</u>

    *1.  Breach of Implied Duty of Good Faith (Count 11)*

    Plaintiffs claim that Home Depot breached the implied covenant of good faith and fair dealing under Georgia law.[5]  Plaintiffs contend that while Defendant was contracting with USF for the manufacture and distribution of Plaintiffs' products to new stores, Defendant had already decided to end its business relationship with Plaintiffs, replace Plaintiffs' product with its own brand, and duplicate Plaintiffs' brand, and thus did not intend to abide by its agreement with the Plaintiffs.  (Pl. Resp.  to Def. MSJ [228], at 2.)  Plaintiffs claim this is a breach of Defendant's implied covenant of good faith and fair dealing.  The law in Georgia is well-settled.  A breach of this implied covenant cannot be asserted independent of a claim for breach of contract, and Plaintiffs have not asserted a breach of contract claim in this action.

    "The implied covenant of good faith and fair dealing in performing a contract has a basis in both statutory and common law.  The Uniform Commercial Code establishes a duty of good faith in performance for contracts governed

_____

    [5]  The parties agree that Georgia law governs Plaintiffs claim of breach of the covenant of good faith and fair dealing.  (See Pl. Resp. to Def.  MSJ, at 17.)

thereunder, and there is a general statutory requirement to perform substantially within the spirit and letter of a contract." Stuart Enters. Int'l, Inc.  v. Peykan, Inc., 555 S.E.2d 881, 883 (Ga. App. 2001) (citing O.C.G.A. § 11-1-203; § 13-4-20). There is also a duty under the common law to "diligently and in good faith seek to comply with all portions of the terms of a contract." Id. at 884.  However, "[t]he covenant to perform in good faith is not an independent contract term.  It is a doctrine that modifies the meaning of all explicit terms in a contract, preventing a breach of those explicit terms de facto when performance is maintained de jure." Id. (citing Alan's of Atlanta, Inc. v. Minolta Corp., 903 F.2d 1414, 1429 (11th  Cir. 1990)).

Stuart Enters. Int'l, Inc.  v. Peykan, Inc. applies here.  In Stuart, the jury returned a verdict for the plaintiff on its claim for a breach of a covenant of good faith.  Plaintiff in the case had alleged a breach of contract, but the jury did not find that a breach of contract had occurred.  On appeal, the Court considered the relationships between the breach of contract and breach of implied covenant claims.  Id.  The Court held that a breach of a covenant of good faith was not independent of a breach of contact:

> In contracts governed by the UCC, the failure to act in
> good faith in performing a contract does not create an
> independent cause of action. . . . [T]he Eleventh Circuit
> . . . has examined [whether the common law creates an
> independent cause of action] and ruled that Georgia law
> would not recognize such an independent cause of action.
> We agree.

Id. at 884.  The Court further explained: "The implied covenant of good faith

modifies, and becomes part of, the provisions of the contract itself.  As such, the

covenant is not independent of the contract."  Id.  Because the jury found there was

no breach of contract, the Court agreed the verdict based on breach of the covenant

of good faith could not be independently supported.

Similarly, in Minolta the court dismissed the plaintiff's claim for breach of

the covenant of good faith and fair dealing, because the plaintiff "did not allege

 . . . that any explicit term in its contracts with [Defendant] was breached.  Thus,

[Plaintiff] sought to set the implied covenant up as an independent term in its

contracts, subject to breach apart from any other . . . [and] the 'covenant' is not an

independent contract term."  Minolta, 903 F.2d at 1429; see also Johnson v.

Citimortgage, 351 F. Supp. 2d 1368, 1381 (N.D. Ga. 2004)(allowing breach of

covenant claim because plaintiff had also pled a breach of contract, and

distinguishing the case from Stuart, "where the plaintiff failed to prove breach of

contract, and <u>Minolta</u>, where the plaintiff failed to even plead breach of contract");
<u>Mgm't Assistance, Inc. v. Computer Dimensions, Inc.</u>, 546 F. Supp. 666, 676
(N.D. Ga. 1982) (refusing to allow separate breach of covenant claim where court
granted summary judgment on breach of contract claim due to the plaintiff's
release of defendant's liability); <u>Heritage Creek Dev. Corp. v. Colonial Bank</u>, 601
S.E.2d 842, 847 (Ga. App. 2004) ("Inasmuch as [Plaintiff] cannot prevail on its
breach of contract claim, it cannot prevail on a cause of action based on the failure
to act in good faith in performing the contract.").

The clear and consistent holding of these cases is that the breach of the
implied covenant of good faith and fair dealing cannot be asserted and does not
survive independent of a claim for breach of contract. Plaintiffs have not pled a
breach of contract claim in this action. In the absence of a breach of contract
claim, Plaintiffs' claim for breach of an implied covenant of good faith and fair
dealing cannot survive summary judgment.[6]

---

[6] Plaintiffs simply have not asserted a breach of contract claim, have not
alleged provisions of an agreement that have been breached, and largely deny there
is any enforceable written agreement with Home Depot. The gist of their
complaint is they were treated unfairly by Home Depot. Even if that is true, there
is in this action no breach of contract alleged upon which a jury may consider if
there was a breach of the implied duty of good faith and fair dealing. In this case,
the Court allowed Plaintiffs to file an amended complaint over a year and a half

### 2. *Plaintiffs' Trade Libel Claim (Count 10)*

Plaintiffs allege that Defendant made certain disparaging remarks about them to other persons or entities regarding the problems they allegedly experienced with USF's products and that these statements were libelous.  Georgia law does not recognize a claim for trade libel.  See Davita, Inc. v. Nephrology Assocs., P.C., 253 F. Supp. 2d 1370, 1374-75 (S.D. Ga. 2003) ("In Anderson, the Georgia Supreme Court had the opportunity to address whether a cause of action exists in Georgia for . . . trade libel, and it explicitly refused to do so.  Since the Anderson case . . ., no Georgia court has expressly found a cause of action for 'injurious falsehood' to exist in Georgia."); Georgia Soc.  of Plastic Surgeons v. Anderson, 363 S.E.2d 140, 144 (Ga. 1987);  Carolina Indus. Prods., Inc.  v. Learjet, Inc., 189 F. Supp.2d 1147, 1167-68  (D. Kan. 2001) (reviewing Georgia law and noting that Georgia has not recognized the tort of injurious falsehood, and that "without a stronger indication that Georgia would recognize [it], . . . the court is unwilling to hold that

─────────────────

after the litigation was instituted.  Neither Plaintiffs' original nor their amended complaint, filed January 11, 2005, alleged a breach of contract claim.  If Plaintiffs had wanted to allege a contract breach, they had significant time and opportunity to do so.  There are a variety of reasons why a breach of contract might have been omitted.  That such a claim was not included is fatal to the breach of implied covenant claim that was asserted.

the plaintiffs have stated a valid cause of action under Georgia law").

California law provides a claim for trade libel when the following elements (at a minimum) are met:  (1) a publication to a third party; (2) which induces others not to deal with the plaintiff; and (3) special damages.  Nichols v. Great American Life Ins. Cos., 169 Cal. App. 3d 766, 773 (Cal. App. 1985).  Under California law, trade libel involves publication of a false and unprivileged statement of fact regarding the quality of property, goods or services.  Id.  "California defamation law requires that the offending statement 'expressly or impliedly assert a fact that is susceptible to being proved false,' and must be able reasonable to be 'interpreted as stating actual facts.'"  Coastal Abstract Service, Inc. v. First American Title Ins. Co., 173 F.3d 725, 730 (9th Cir. 1999).

The parties disagree as to whether Georgia or California law applies to the trade libel claim.  Whether Georgia or California law applies, the Court's conclusion is the same:  Georgia law does not support a trade libel claim, and even if California law applies, the evidence does not support a claim of trade libel in this case.

Plaintiffs' claim for trade libel is based on three identified alleged communications[7] and some rumors:  (1) an April 19, 2000 memorandum sent by Mr.  Weinstein to USF's sales representative, Mr. Gagnon, listing a variety of problems Defendant had with USF; (2) an August 1999 incident where Defendant allegedly complained to USF personnel about USF's shipping delays;  (3) an October 2000 meeting between Defendant, Mr.  Gagnon, and Mr.  Chang, in which Defendant reiterated its problems with USF and ended the parties' business relationship; and, (4) "rumors" heard by Jack Chang that Defendant was disparaging USF to other vendors by repeating its complaints regarding USF on or after October 2000.  (Pl. Opp. to Def. MSJ, at 21-22; Jack Chang Decl., at ¶ 33.)

Defendant argues that the first two incidents supporting Plaintiffs' trade libel claim are barred by the two-year statute of limitations, because the alleged publications occurred in August 1999 and on April 19, 2000.  (Def. MSJ, at 17.) Plaintiffs admit that these two alleged publications occurred in August 1999 and April 2000.  The Court agrees that the statute of limitations has run on the August

---

[7]  None of the alleged libelous communications are specified in the Amended Complaint.  (FAC [60], at ¶¶ 92-97.)  While this failure may have been enough to dismiss these claims, the Court has nonetheless evaluated the communications Plaintiffs described in their summary judgment briefing.

17

1999 and the April 19, 2000 alleged libelous statements and summary judgment on these publications is thus appropriate.  Guess, Inc. v. Superior Ct., 176 Cal. App. 3d 473, 479 (1986) (holding a two-year statute of limitations period exists for trade libel).

Even if these two communications are not time barred, neither they nor Plaintiffs' third communication in support of their claim for trade libel--that "Home Depot reiterated these phantom issues[8] to Ron Gagnon and [Jack Chang] in October 2000[9] when they informed [them] that Home Depot was terminating its business relationship with [Plaintiff]"--constitute trade libel under California law. (Jack Chang Decl., at ¶ 33.) [10]

A cause of action for trade libel requires, at a minimum:  (1) a publication to a third party; (2) which induces others not to deal with the plaintiff; and (3) special

---

[8]  Although not precisely articulated by Plaintiffs, the "phantom issues" appear to be lead standard compliance, product quality, packaging quality, and shipping delays Home Depot had with USF which were the subject of the April 19, 2000 memorandum and the August 1999 complaint.

[9]  This incident allegedly occurred in October 2000, and therefore it is not barred by the two-year limitation period.  Plaintiffs filed this lawsuit on August 9, 2002.  (Compl. [1].)

[10]  The rumors that Plaintiffs allege support their trade libel claim are discussed separately below.

damages.  <u>Nichols</u>, 169 Cal. App. 3d at 773.  In this case, the remarks at issue were made to Ron Gagnon, USF's sales representative, Jack Chang, USF's vice president, or other USF representatives.  (Pl's Resp.  to DSF [206], at  ¶¶ 17-30[11]; Jack Chang Decl., at 33.)  While the parties disagree as to the precise characterization of Ron Gagnon's position with USF,[12] it is clear that he was Plaintiffs' sales representative, through whom Home Depot would contact Plaintiffs when ordering products for the opening of new Home Depot stores.  (<u>See</u> Pl. Opp.  to Def.  MSJ, at 6.)  He represented USF in its negotiations with Home Depot and in negotiating advertising money and volume discounts.  (Gagnon Dep. [187], at 66-69.)  His name appears on the VBA between USF and Home Depot as

_____

[11]  Plaintiffs' submissions regarding material facts that are disputed or not disputed are imprecise and largely serve as additional briefing and argument. Having reviewed the "facts" that Plaintiffs argue are material to their trade libel claim, the court finds the communications at issue are complaints communicated by Home Depot to USF, and not to third parties.

[12]  Defendant calls Mr. Gagnon USF's service agent, while Plaintiffs contend he is an independent sales representative or outside sales representative.  (See DSF, at ¶ 14; Pl. Resp. to DSF, at ¶ 14.)  Mr. Gagnon, in his deposition, termed himself a "marketing director" of sorts for USF, as does the VBA.  (Gagnon Dep. [187], at 57-58, 66-69.)  Regardless, both parties admit that he was authorized to communicate with Home Depot on behalf of USF and served as USF's principal contact with Home Depot.  (DSF, at ¶ 14; Pl. Resp. to DSF, at ¶ 14.)

the "Corporate Contact" for USF, and his title is listed on the VBA as "Marketing Director."  (Jack Chang Decl., Ex.  1.)  Both parties agree that he was authorized to communicate with Home Depot on behalf of USF.  (DSF, at ¶ 14, Pl. Resp. to DSF, at ¶ 14.)

Regardless of his title, Mr. Gagnon represented USF in taking orders for its products and was working on behalf of USF throughout the parties' business relationship.  Regardless of how you characterize him, he was at all times acting within his authority on behalf of USF and thus does not constitute a third party for purposes of the publication requirement for trade libel. See EPIS, Inc. v. Fidelity & Guaranty Life Ins. Co., 156 F. Supp.2d 1116, 1129 n.9 & n.10 (N.D. Cal. 2001). In those instances where complaints were communicated to Mr. Chang, these, by their nature, were not communications to third parties but were communications to USF itself.  In short, Plaintiffs have failed to show the publication element of their claim for trade libel.

A claim of trade libel also requires that the alleged defamatory communications not be privileged.  Mann, 120 Cal. App. 4th 104 (stating that trade libel requires the intentional publication of a false and unprivileged statement of fact).  California law provides a qualified privilege for communications between

20

parties with a mutual interest in the relevant information, holding privileged

information that is communicated "without malice, to a person interested therein,

(1) by one who is also interested . . . or (3) who is requested by the person

interested to give the information."  Cal. Civ. Code 47(c).  "Decisional law has

recognized the defense of qualified privilege in a variety of commercial settings."

Warfield v. McGraw-Hill, Inc., 32 Cal. App. 3d 1041, 1046 (1973).  "Whether the

privilege exists in a particular case is a legal question for the court.  Coastal

Abstract, 173 F.3d at 735.

Here, Home Depot's communication to USF's sales representative and vice

president of problems with USF's product and performance, and ultimately the

reasons for its termination of the business relationship, is unquestionably

information in which both parties were interested.  Home Depot had an interest in

its business dealings with USF, and Mr. Chang, as vice president, and Mr. Gagnon,

USF's principal contact with Home Depot, had an interest in the business

relationship between his company and Home Depot and in knowing Home Depot's

perceptions of USF and its products.  See Coastal Abstract, 173 F.3d at 735.

Because the communications about which Plaintiffs complain were qualified

privileged, "Plaintiff[s] [were] required to show that they were made with actual malice or with knowledge of their falsity or a reckless disregard for the truth." Warfield, 32 Cal. App. 3d at 1047. Plaintiffs do not point to anything in the record which shows Defendant acted maliciously, knowingly or recklessly.

The communications at issue, therefore, fail to meet the elements required to show a claim of trade libel,[13] and summary judgment with respect to them is appropriate.

Finally, Plaintiffs base their claim of trade libel on unspecific rumors cited

---

[13] Because Plaintiffs' evidence fails to meet the first element of trade libel and is qualified privileged, this Court does not examine in detail the evidence offered for the other two elements of the tort. But even if Plaintiffs could show that a publication occurred, their evidence does not support the other elements of trade libel–that "the publication has played a material and substantial part inducing others not to deal with him, and that as a result [Plaintiff] has suffered special damages." Nichols, 169 Cal. App. 3d at 773. Plaintiffs must present evidence showing they suffered some pecuniary loss. They "may not rely on a general decline in business arising from the falsehood, and must instead identify particular customers and transactions of which it was deprived as a result of the libel." Mann, 120 Cal. App. 4th at 109. Plaintiffs have not pointed to evidence in the record that they have lost other customers due to any of the communications they assert to support their trade libel claim. In fact, USF admitted that Home Depot was its only customer and thus they could not have been impacted by the loss of third party business–because there was none. (Pl. Resp. to DSF, at ¶ 10.) Plaintiffs cite JAS's default on a loan due to the alleged libel as evidence of special damages. This, however, does not show "loss of prospective contracts with the plaintiff's customers" and thus does not satisfy the damages requirement. (Jack Chang Decl., at ¶ 46.)

by Jack Chang in his declaration.  These "rumors" cannot  support a trade libel claim because they are: (1) inadmissible; and (2) not sufficient to show the elements required for a trade libel claim.  First, the rumors are inadmissible because they are hearsay.  Plaintiffs must demonstrate that they will be able to submit admissible evidence to support their claims.  Macuba v. DeBoer, 193 F.3d 1316, 1324-25 (11th Cir. 1999).  The declaration offered by Plaintiffs in this case fails to do that.

Second, these rumors are so vague that it is not credible to contend they meet the elements required for a trade libel claim.  They do not specify a third-party to whom the alleged libelous comments were made, except to say that Defendant "told other vendors, including Globe Union."  (Jack Chang Decl., at ¶ 33.)  Plaintiffs do not allege, and their evidence does not show, that these rumors induced others not to deal with the Plaintiffs; and they do not point to any evidence they suffered special damages as a result of these rumors.

If Plaintiffs' evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  There must be sufficient evidence on which the jury could reasonably find for the plaintiff.  Id. at 254.  These vague and unspecific rumors,

mentioned only once in a witness's declaration, are not sufficient to meet this

burden and doubtfully are admissible.  Plaintiffs' evidence of rumors is therefore

insufficient to defeat summary judgment on their trade libel claim.[14]  Regardless

from which vantage point one views the statements about which Plaintiffs

complain, there is no logical basis to argue they are libelous.  Defendant's Motion

for Summary Judgment on Plaintiffs' trade libel claim is **GRANTED**.[15]

---

[14]  Plaintiffs argue they need to depose Keith Yurko regarding the rumors. The argument is unconvincing.  The parties were required to produce a detailed discovery plan including the depositions they desired to take in this action.  This plan was presented to and entered as an order of the Court.  The Plan provided for discovery to close on  September 15, 2005.  (Order of April 28, 2005, at 21.) Assuming the Yurko deposition was resisted by Mr. Yurko when he was subpoenaed, Plaintiffs did not advise the Court they were having trouble obtaining his testimony, and they did not depose him outside the discovery period.  In fact, Plaintiffs claim that Mr. Yurko was important to depose is conclusory and not persuasive.  Even if Mr. Yurko testified that disparaging remarks about USF were made, for the reasons stated in this opinion, such comments do not support a trade libel claim.

[15]  Under California law, there is no separate and distinct cause of action for civil conspiracy.  Entertainment Research Group v. Genesis Creative Group, 122 F.3d 1211, 1228 (9th Cir. 1997).  "Conspiracy is not an independent tort; it cannot create a duty or abrogate an immunity.  It allows tort recovery only against a party who already owes the duty and is not immune from liability based on applicable substantive tort law principles."  Applied Equipment Corp. v. Litton Saudi Arabia Ltd., 869 P.2d 454, 459 (Cal. 1994).  Because Plaintiffs' claim for trade libel does not survive, summary judgment on Plaintiffs' claim for conspiracy is also appropriate.

### 3. Plaintiffs' Motion to Strike

Plaintiffs move to strike declarations submitted by Defendant in support of its motion for summary judgment.  Plaintiffs object to significant portions of the declarations on various evidentiary grounds.

For example, Plaintiffs object to the Purchase Order Agreement ("POA"), attached as Exhibit A to Home Depot's Brief in Support of Home Depot's Motion for Summary Judgment [183] on multiple grounds, among them hearsay and lack of authentication.  (Mot.  to Strike, at ¶ 1.)  The POA is not hearsay.  See Baker's Carpet Gallery v. Mohawk Indus., 942 F. Supp. 1464, 1474 (N.D. Ga.  1996). "Signed instruments such as wills, contracts, and promissory notes are writings that have independent legal significance, and are nonhearsay."  Kepner-Tregoe, Inc. v. Leadership Software, 12 F.3d 527, 540 (5th Cir.  1994)( "To introduce a contract, a party need only authenticate it.").  Jack Chang's signature on the Vendor Buying Agreement, which expressly acknowledges the POA, and USF's admission that it read the POA before signing the VBA, are sufficient to authenticate the agreement. See Fed. R. Evid. 901(a) ("The requirement of authentication . . . is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."); (USF Answer to Counterclaims [76], at ¶ 1.)  Mr.  Crawford's

declaration that he provided copies of the VBA and POA to USF in 1993 also authenticate the document.  (Crawford Decl. [214], at ¶ 4.)

Plaintiffs also object to the written communications that Home Depot sent to USF concerning its problems with USF, its requests for change, and warnings that USF's business relationship was at risk.  (Mot. to Strike, at ¶¶ 2, 4-6, 44-47.) These documents qualify as business records.   Fed. R. Evid. 803(6) (providing a hearsay exception for "[a] memorandum . . . of acts, events, conditions, opinions . . . made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity"). Furthermore, if they are offered for a purpose other than establishing the truth of the matter asserted, such as showing that Defendant shared the information with Plaintiffs, then the memoranda are not hearsay.

In addition to these specific objections, Plaintiffs assert unspecific, boilerplate objections to virtually every other paragraph of four affidavits submitted by Defendant, providing little or no explanation as to the basis of their objections.  (Mot. to Strike, at 4-34.)  Rule 56(e) requires that affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show . . . the affiant is competent to testify to the matters stated

therein." Fed. R. Civ. P. 56(e). But "otherwise admissible evidence [may] be

submitted in inadmissible form at the summary judgment stage, though at trial it

must be submitted in admissible form." McMillian v. Johnson, 88 F.3d 1573, 1584

(11th Cir. 1996), aff'd 520 U.S. 781 (1997). The affidavits meet the requirements

to allow the Court to consider them on summary judgment. The motion to strike

them is **DENIED**. Indeed, Plaintiffs' failure to specify the basis for its objections

alone is sufficient reason to deny Plaintiffs' motion to strike. [16]

C. Plaintiffs' Motion for Summary Judgment

   1. *Defendant's Breach of Contract and Express Warranty Claims*[17]

Home Depot alleges in its counterclaim it had a contract with Plaintiffs in

the form of the VBA and POA and that Plaintiffs breached it by supplying it with

---

[16] Defendant filed a motion for sanctions to preclude the Court's consideration of the Affidavit of Monique Chang on the grounds that she was not timely made available to be deposed in this action. Because the information provided by Ms. Chang was not material in the Court's consideration of the motions pending before it, Defendant's Motion for Sanctions [195] is **DENIED** as moot.

[17] This Court will consider the claims for breach of contract and breach of express warranty together because Plaintiffs address the two claims together in their Motion for Summary Judgment and make similar arguments for both. (Pl. MSJ, at 7.)

defective products and failing to reimburse Home Depot for product returns.
Plaintiffs first argue in their Motion for Summary Judgment that the statute of
limitations has run on Home Depot's claim for breach of contract and for breach of
express warranty.  (Pl. MSJ, at 7.)  Plaintiffs submit that Home Depot alleges the
breach of the contract occurred at least as far back as December 1999 and, because
Defendant filed its Counterclaim on February 5, 2004,[18] the four-year statute of
limitations for breach of contract bars the breach of contract claim.  (Pl.  MSJ,
at 8); O.C.G.A. § 11-2-725(1).

Defendant argues that its counterclaims concern charges for defective
products returned to USF and that USF's failure to pay for them occurred *after*
Defendant stopped purchasing from Plaintiffs in October 2000.  (Def. Opp. to Pl.
MSJ [198], at 7.)  Because its claims for breach of contract and breach of warranty
did not accrue until USF failed to honor its obligations in December 2000 and
beyond, Defendant argues its counterclaims fall within the four-year statute of
limitations.  (Id. at 8.)

_____

[18]  (Answer by Home Depot to Complaint and Counterclaim Against U.S.
Faucets [54].)

28

"The true test to determine when a cause of action accrues is to ascertain the time when the plaintiff could first have maintained [its] action to a successful result."  Skully v. First Magnolia Homes, 614 S.E.2d 43, 45 (Ga. 2005) (quotation and citation omitted).  Under Georgia contract law, the "essential elements of a breach of contract claim are (1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom."  TDS Healthcare Systems Corp. v. Humana Hosp. Illinois, Inc., 880 F. Supp. 1572, 1583 (N. D. Ga. 1995) (citing Cartin v. Boles, 155 Ga. App. 248, 252, 270 S.E.2d 799 (1980)).

In this case, Defendant has offered evidence that the POA it contends governed the relationship between Plaintiffs and Defendant required USF to provide Defendant with products that were free from defects.  (Hicks Decl. [200-1], at ¶ 10.)  If Plaintiffs' products were defective, the POA authorized Defendant to return defective merchandise to Plaintiffs and to charge Plaintiffs for any expenses incurred as a result of those defects.  (Id.)  Further, Defendant offers evidence that as long as it maintains an ongoing relationship with the vendor, Defendant deducts those amounts from its invoice payments to the vendor, but once the business relationship ended and Home Depot exhausted any funds due to the vendor, Plaintiffs obligations continued to accrue until they were paid or Home

29

Depot wrote them off.  (Id. at ¶ 14.)  In October 2000, Defendant terminated its

relationship with Plaintiffs, and Defendant has presented evidence that soon

thereafter, Defendant exhausted all USF funds from which it could deduct amounts

it was owed and thereafter began accruing amounts it was owed for the return of

USF products during the period of December 2000 and February 2002.  (Def. Opp.

to Pl.  MSJ, at 5; Hicks Decl. ¶ 13-15 & Ex. E.)

Thus, Defendant's evidence shows that although it began experiencing

problems with Plaintiffs' products beginning in 1999, it did not begin to experience

actual damages until sometime between October and December 2000, when

Defendant was no longer able to deduct its charges from its invoice payments to

USF, and it began to accrue amounts owed to it by USF for returned products.

Under Georgia law, a claim for breach of contract does not exist until damage has

been suffered.  TDS Healthcare Systems Corp., 880 F. Supp. at 1583.   Defendant's

counterclaims for breach of contract and breach of express warranty  did not accrue

until after October 2000, and Defendant's claims are therefore within the statute of

limitations period.

Plaintiffs also argue that Defendant has failed to show a material dispute

exists as to whether there is a valid agreement between the parties.  (Pl. MSJ, at 9.)

Plaintiffs' argument is without merit.  USF has admitted that USF's Vice President, Jack Chang, testified that he signed the VBA form, which, when signed stated expressly that USF accepted the terms of the VBA and POA.  In signing the VBA, Mr. Chang agreed that he had read the POA and agreed its terms would govern the agreement with Defendant.  (I Dep. of J. Chang [184], at 23 (September 6, 2005); Def. Opp. to Pl.  MSJ, at 9.)  In Plaintiffs' Answer to its Counterclaims, Plaintiffs admitted they "entered into an agreement with Defendant entitled Corporate Vendor Buying Agreement after reading a document entitled 'Purchase Order Agreement.'" (Pl. Answer [76], at ¶ 1.)  USF also admitted that it signed the VBA and was provided a copy of the POA.  (Pl. USF's Responses and Objections to Home Depot's First Req. to Admit ¶¶ 1-2, attached as Ex. 1 to Doherty Decl. [183-23].)

While Plaintiffs are free to attack the validity of the POA and any other agreement between the parties at trial, including questioning the authenticity of the contract, the Defendant "need not present evidence in a form necessary for

admission at trial" to survive summary judgment, Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999), but must offer sufficient evidence that a

genuine dispute exists regarding whether the POA is a valid, enforceable

agreement between the parties.  The Defendant has done so in this case by

presenting evidence that USF signed the VBA, acknowledging that it read and

received the POA.

Plaintiffs also argue that Home Depot has failed to produce any credible

evidence that any products provided to Home Depot contained material defects.

(Pl.  MSJ, at 10-11.)  Among other things, USF argues that Defendant has failed to

identify any customers whom it intends to call at trial to testify that they suffered

injury as a result of these defects, and that Defendant has not produced any product

in its possession containing such a defect.  USF also states that Defendant has

failed to produce any credible evidence that it requested USF to remedy or repair

any of the alleged defects.  (Id. at 13.)

Defendant argues that Plaintiffs miss the point of its counterclaims, and

states that it only seeks damages for breach of contract and breach of warranty for

defects encountered *after* Home Depot ended the relationship with USF in October

2000.  (Def.  Opp.  to MSJ, at 15.)  Defendant points to its business records, in the

form of a Voucher Summary, showing that USF continued to carry amounts owed

by USF for product returns or cancellation based on defective USF products for the

period December 2000 to February 2002.  (Hicks Decl. ¶ 13 & Ex.  E.)  This

Voucher Summary provides information on Home Depot's product returns, the

amount Home Depot was allowed as credit associated with each return, and the

date on which USF's payment came due.  (Id.)  Defendant argues that this

Summary is an admissible business record which not only proves its product

returns and demands for reimbursement to Plaintiffs, but also will establish

damages.  (Def. Opp. to Pl.  MSJ, at 18.)  While the Plaintiffs are free to attack the

credibility of the document or other testimony regarding defects and damages at

trial, Defendant has offered sufficient evidence that a genuine dispute exists

regarding whether there was a breach of contract, breach of warranty or both and

the consequences arising from them.

> ### 2.   *Defendant's Claim for Expenses of Litigation Based on the POA*

Defendant also counterclaims for attorneys' fees incurred in collecting the

amounts due for product returns and enforcing Defendant's contract rights in

defense of the claims Plaintiffs have asserted against it.  (Answer at ¶¶ 30-34.)

Paragraph 29 of the POA states: "Should the Home Depot use the services of an

attorney to enforce any of its rights hereunder, or to collect any amounts due,

Vendor shall pay The Home Depot for all costs and expenses incurred, including

33

reasonable attorneys' fees." Plaintiffs argue in their Motion for Summary Judgment that a request for recovery of litigation expenses or attorneys' fees is an element of damages–not a separate, identifiable claim, and it should therefore be dismissed. (Pl. MSJ, at 14.)

The Court has found that a material dispute exists over whether or not the POA is valid and enforceable between the parties and the amount of attorneys fees that might be due and owing if the provision is enforced. Accordingly, Home Depot's claim for litigation expenses based upon the same POA survives summary judgment. Plaintiffs' motion for summary judgment on this count is **DENIED**.

### 3. *Defendant's Statutory Claim for Litigation Expenses*

Defendant also counterclaims for attorneys' fees pursuant to O.C.G.A. § 13-6-11. Plaintiffs argue that litigation expenses under O.C.G.A. § 13-6-11 are an element of damages and not a separately identifiable claim and should therefore be dismissed. (Pl. MSJ, at 16.) The statute states: "where the plaintiff has specially pleaded and has made prayer therefor and where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense, the jury may allow [expenses of litigation]." O.C.G.A. § 13-6-11. The plain language of the statute requires the claimant to specially plead the statute

34

in order to receive litigation expenses.  The Court, therefore, declines to dismiss this claim.

## IV.  CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [183] as to Plaintiffs' claims for trade libel, breach of the implied covenant of good faith and fair dealing, and conspiracy, is **GRANTED** and Plaintiffs' Motion to Strike [220] is **DENIED.**

**IT IS FURTHER ORDERED** that  Plaintiffs' Motion for Summary Judgment on Defendant's Counterclaims [181] is **DENIED**.  Defendant's Motion for Sanctions to Preclude Testimony of Monique Chang [195] is also **DENIED** as moot.

**SO ORDERED** this 31st day of May, 2006.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE